CHASE (SMITH v.). See Cases Nos. 13,022 and 13,023.

CHASE (UNITED STATES v.). See Cases Nos. 14,787 and 14,788.

CHASE v. VERMONT VAL. R. CO. See Cases Nos. 11,264 and 11,265.

---

## Case No. 2,630.

CHASE et al. v. WALKER et al.

[3 Fish. Pat. Cas. 120.][1]

Circuit Court, E. D. Pennsylvania. Nov., 1866.

EQUITABLE ASSIGNMENT OF PATENT — OF EXTENSION.

1. J. contracted to convey to W. a local interest in letters patent "to the utmost and fullest extent, as to duration, that he is or may be entitled to under the said letters patent." *Held*, that these words transferred an equitable title to the same local interest in an extension of said letters patent afterward obtained.

2. The words "said letters patent," apply as well to the letters patent as extended as to the original term.

3. Where a patentee conveys an original patent and "any further patent which he shall or may at any time hereafter procure for any improvement or improvements upon the invention patented," he must be understood to convey so much of an interest in any future extension of his original patent as may be necessary to the beneficial use of the improvements.

[See Littlefield v. Perry, 21 Wall. (88 U. S.) 205; Philadelphia, W. &. B. R. Co. v. Trimble, 10 Wall. (77 U. S.) 367; Nicholson Pavement Co. v. Jenkins, 14 Wall. (81 U. S.) 452; Puetz v. Bransford, 31 Fed. 458; Aspinwall Manuf'g Co. v. Gill, 32 Fed. 697.]

This was a bill in equity filed [by Irah Chase, Jr., and Albert Clark, partners as Chase & Co.], to restrain defendants [Mat-

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

thew Walker, Sr., and Daniel S. Walker, partners as M. Walker & Son], from infringing letters patent [No. 5,006], for "improvement in the process of manufacturing wire grating," granted to Henry Jenkins, March 6, 1847, reissued June 28, 1859 [No. 7,471], and extended for seven years from March 6, 1861. The bill alleged that after the extension of said patent the same was assigned by Jenkins, the patentee, to the New York Wire Railing Company, and by them conveyed to Chase & Co., the complainants.

The answer averred that prior to the assignment to the New York Wire Railing Company and during the original term of the letters patent, Jenkins, by his written contract, had conveyed to Daniel S. Walker the exclusive right, under said letters patent, within the state of Pennsylvania, except certain counties. It was alleged that this contract also conveyed an equitable interest in the extension of said letters patent, and that defendants had never used said invention except within the territory so conveyed. The answer further alleged that the conditions set forth in the contract had been fulfilled and that by proper assignments, all of the defendants were entitled to protection. This state of facts, it was claimed, constituted a license. The cause was heard on bill and answer. The contract between Jenkins and Walker, upon the construction of which the controversy turned, was as follows: "Whereas, Henry Jenkins, of Pottsville, Pennsylvania, did obtain letters patent of the United States of America for certain improvements in the process of manufacturing wire grating, etc., which letters patent *bear date* the 6th day of March, A. D. 1847, and also certain other letters patent of the United States of America for certain improvements in machinery for weaving wire grating, which said last-mentioned letters patent bear date the 7th day of March, A. D. 1847, now it is hereby agreed by and between the said Henry Jenkins and Daniel S. Walker, of the county of Philadelphia, in the state of Pennsylvania, as follows, that is to say: that the said Henry Jenkins, upon the payment of the following notes hereby acknowledged to be delivered to him, to wit: four notes drawn by Wickersham and Walker, in his favor, all dated this day, one for two hundred dollars payable at six months from date, another for three hundred dollars payable at nine months from date, another for the sum of six hundred and fifty-five dollars and twenty-eight cents at twelve months from date, and the other for six hundred and fifty-five dollars and twenty cents at eighteen months from date, that he, the said Henry Jenkins shall and will forthwith, by proper deed or assignment, assign and transfer unto the said Daniel S. Walker, his executors, administrators and assigns, the full, free, entire, and exclusive right, title, and privilege of using, exercising, and enjoying all and singular the powers, rights, benefits and advan-

tages conferred upon and vested in him, the said Henry Jenkins, under and by virtue of all the letters patent hereinbefore recited and mentioned, in and for the state of Pennsylvania, to the utmost and fullest extent as to duration, manner of enjoyment, or otherwise, howsoever that he is or may be entitled to, under the said letters patent, excepting, nevertheless, the right in and for the counties in the said state, viz.: Allegheny, Beaver, Mercer, Huntingdon, and Erie, and also excepting the right as applicable to and for screens for anthracite coal, and for no other use or purpose whatever in and for the following-named counties in said state, viz.: Schuylkill, Lehigh, Carbon, Pike, Luzerne, Wayne, Wyoming, Columbia, Northumberland, and Dauphin. And the said Henry Jenkins doth further covenant and agree that upon the payment of the aforesaid notes he will also forthwith assign and transfer unto the said Daniel S. Walker and his legal representatives aforesaid, any further patents or patent rights which he, the said Henry Jenkins, or any person for him, shall or may at any time hereafter procure for any improvement or improvements upon the invention patented as aforesaid, and also any and all renewals thereof in and for the said state with the like exceptions as are herein before expressed. Witness the hands and seals of said parties this twentieth day of January, A. D. 1849. It is furthermore agreed and understood that until there shall be default made in the payment of the aforesaid notes, that the said Daniel S. Walker and his assigns shall have and exercise the rights above agreed to be conveyed in the manner and form above expressed, exclusively. Witness the hands and seals of the said parties as above expressed. Henry Jenkins (seal.) Daniel S. Walker (seal.)"

This agreement was recorded in the patent office, April 20, 1849.

J. Cooke, Longstreth and Leonard Myers, for complainants.

George Harding, for defendants.

Before GRIER, Circuit Justice, and CADWALADER, District Judge.

CADWALADER, District Judge. It is Judge Grier's opinion, in which I concur, that this is a very clear case for the defendants. As the proceeding is in equity, it is immaterial whether the instrument of January 20, 1849, vested a legal or an equitable interest in the local privilege which it was intended to transfer.

The question is, whether this instrument sufficiently indicates an intention to transfer an interest which might endure beyond the original term of fourteen years. If such intention is in anywise apparent, the effect must be to transfer the local interest for the term of the extension of seven years, afterward obtained. The question may be resolved by considering two clauses of the

instrument. They will be examined separately, and afterward together.

In the first, the patentee grants the exclusive local privilege to the utmost and fullest extent, as to duration, that he is or may be entitled to under the said letters patent. If the words "under the said letters patent" had been omitted, the effect of this clause could scarcely have been questionable. Independently of the contingency of an extension, the term could be neither less nor greater than the original fourteen years. Therefore, independently of this contingency, there could be no such comparative duration as to satisfy the words "utmost and fullest extent." The applicability of this remark is not excluded by the addition of the words "under said letters patent." In the reports of cases which have been cited in the argument, the original patent is, after an extension, considered as having been, from the first, for certain purposes, a patent for the extended term.

What is in one part of the act of congress [5 Stat. 117] called an extension is, indeed, in another part of the act called a renewal of the patent. But the practice of the patent office, prescribed expressly by the act, is not to issue a new patent, but merely to certify the extension upon the original patent.

In the second clause, the patentee covenants to assign any further patents or patent rights, which he may, at any time afterward, procure for any improvement or improvements upon the original invention, and also any and all renewals thereof in and for the said state. Independently of the arguments upon the context of this clause, and upon the different meanings which may be attributable to the word renewals, the substance of the provision for the transfer of subsequent patents for improvements must be considered. Any such subsequent patent would be for a term of fourteen years, which, whether it should be extended or not, must necessarily continue after the expiration of the term of the former patent for the original invention. Now the patentee can not be understood as having intended either to deprive himself of the right of applying for an extension of the original patent, or to reserve this right so as to frustrate the subsequent local use of the patented improvements under the transfer in question. But the subsequently patented improvements could not be used without the use of the original invention; and the parties can not have intended that, as to such improvements, he should be able to restrain the use of the original invention after the expiration of the original term. There was thus one purpose, at least, for which the local privilege must have extended beyond the original term.

Lastly, the two clauses will be considered together. Here the second, as a glossary to define the words of the first, will remove any doubt which might otherwise remain, as to their import. The words of the first clause

"utmost and fullest extent as to duration," are shown by the second clause to have extended for a specific purpose beyond the original term of fourteen years. If so, as the words of the first clause are not specific, but general, their intended application, as to the local privilege transferred, must have been the same for general purposes, including the extension in question. Notwithstanding the decree under which the bill was taken pro confesso, the cause was heard, by consent, as upon bill and answer. Moreover, the documents under which the parties respectively deduce title, were, by consent, read in evidence at the hearing.

The decree must be opened and set aside, and the bill dismissed, with costs.